1 Pars. Cont. 57: Story, Ag. § 58. As to what is sufficient authority to an agent to make a valid contract for the sale of real estate, consult Bissell v. Terry, Sup. Ct. Ill. Sept. term, 1873, opinion filed Jan. 30, 1875 [69 Ill. 184].

BOSSIEUX (MUTUAL BLDG. FUND SOC. v.). See Case No. 9,977.

## Case No. 1,668.

### The BOSTON.

[Cited in The Henry Ewbank, Case No. 6,-376. Nowhere reported. Opinion not now accessible. See Case No. 1,673.]

## Case No. 1,669.

### The BOSTON.

### [1 Blatchf. & H. 309.] [1]

District Court, S. D. New York.  Oct. 19, 1832.

PARTIES—ADMINISTRATOR—OBJECTION — SHIPPING—APPOINTMENT OF MASTER —BOTTOMRY—LIENS—PRIORITY.

1. An objection to the competency of an administrator to appear as claimant in a suit in rem, must be taken on his appearance, and before sale of the property and payment of the proceeds into court.

2. An administrator appointed in another state, who has not taken out letters within the jursidiction of this court, may intervene in behalf of his intestate, in a suit in rem in this court against a vessel which was the property of the intestate at his death.

3. In this country, no formalities are necessary to the due appointment of a shipmaster The registry acts of the United States in regard to vessels and their masters, are only designed for the protection of the revenue, and do not affect the validity of a master's authority.

4. Where, upon the death of the master and sole owner of a ship during a voyage, the mate took command, and his name was substituted in the ship's register for that of the former master, and he navigated her for a year, without objection, and with the knowledge of the widow and children and agent of the former master: Held, that his acts done in the capacity of master were valid as against the representative of the deceased owner.
[Cited in Seaver v. The Thales, Case No. 12,-594.]

5. The lender upon bottomry is bound to ascertain that the money is necessary for the particular voyage, as well as that the master has no other resources on hand.

6. It seems that the lien of a material man is assignable.
[Distinguished in The Champion, Case No. 2,583; The R. W. Skillinger, Id. 12,181. Cited in The Sarah J. Weed, Id. 12,350.]

7. Ordinarily, the lien of a material man will not be upheld beyond the termination of the voyage for which the supplies are furnished.
[Cited in Marsh v. The Minnie, Case No. 9,-117; The H. B. Foster, Id. 6,291; The Wexford, 7 Fed. 681; The J. W. Tucker, 20 Fed. 133; The Young America, 30 Fed. 792.]

8. Parties who could not sustain an original action in rem, may, sometimes, on petition, be paid out of a surplus remaining in court.

9. This is usually done in cases where the fund would otherwise be paid over to a foreign owner and domestic creditors would be left to a merely personal remedy, against such owner, before a foreign tribunal.

10. Freighters, whose goods are disposed of at a foreign port to raise money for necessary repairs, have a lien upon the vessel for the value of the goods at the port of destination.
[Cited in Dupont de Nemours v. Vance, 19 How. (60 U. S.) 170; Janney v. The Belle Lee, Case No. 7,211.]

[11. Cited in The Champion, Case No. 2,583, to the point that want of jurisdiction to enforce a lien in any particular locality is not fatal to the existence of the lien itself.]

[12. Cited in The Rapid Transit, 11 Fed. 335, to the point that, as between claimants of the same class, the last furnisher of supplies may sometimes be preferred to the first.]

In admiralty. The first libel in this case was filed, in rem, by William Morrison, to enforce a bottomry bond executed to him in Glasgow, in Scotland, on the 3d of November, 1831, by Henry Upton, as master of the ship Boston, an American vessel. In February, 1831, Oliver P. Finlay, at that time master and sole owner of the Boston, died while his ship was on a voyage from Greenock, in Scotland, to Charleston, in South Carolina, and Henry Upton, then chief mate, took command, and carried the vessel into the latter port. He there gave her up to the confidential agent of Finlay, who was also consignee, and was continued by him in command. Upton's name was entered as master in the ship's register, and he was sent back with her to Greenock. The family of Finlay were, at that time, in Greenock, though his domicil, at the time of his death, was at Alexandria, in the District of Columbia. Finlay's family made no objection to the appointment of Upton, as master, and returned with him in the vessel to this country. On the 3d of October, 1831, William D. Nutt, the claimant in these actions, was appointed, at Alexandria, administrator of Finlay, but took out letters of administration at no other place. On the 3d of November, 1831, the Boston being then at Greenock, Upton bottomed her to Morrison, the libellant, as security for a sum of money advanced by him. Morrison, who knew the circumstances under which Upton got possession of the ship, and was advised by counsel that his power to bottom her was clear, purchased the claims of McLelland & Co., creditors of the vessel, for debts incurred by her upon her previous voyage, and for which those creditors threatened to arrest her. None of those debts were incurred for the necessities of the ship for the voyage to which the bottomry referred. One of them was for materials furnished for the necessary equipment of the vessel upon her preceding voyage. To this libel two defences were interposed. The first was the claim and answer of Nutt, as administrator of Finlay, denying the authority of Upton, as master of the Boston, to execute a bottomry bond. The other was

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]